**FILED - KZ**
April 1, 2025 2:40 PM

U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
__mg__ Scanned by‌

**1:25-cv-365**
Robert J. Jonker
U.S. District Judge

United States District Court

Western District of Michigan

Allen Wegener (Plaintiff, Pro Se)

4250 Leisure Lane Apt. G523

Kalamazoo, Michigan 49006


\V.


Department of the Navy (Defendants)

Honorable Secretar6y John Phelon

1000 Navy Pentagon Room 4D652

Washington, D.C. 20350


Request for proper medical discharge

The Plaintiff says this,

1) He entered the United States Navy on January 27, 1985 and performed his training at Great Lakes Naval Base in Chicago, Illinois.
2) Plaintiff enlisted before this under what was called the Delayed Entry Program around 1983 and dep-ped out of this program to complete his education so he could be more valuable to the Navy,
3) When he eventually did reenlist willingly the letter showing the reason why he did not complete his Delayed Entry Program stated he "Refused to Enlist" which was already a false statement that the personal person typed in making it look like he just didn't want to enlist at all.
4) This statement had already created a bad experience for him when he did report to boot camp at Great Lakes Naval Base.

2

5) The Plaintiff's Navy Recruiter was sincere in encouraging me to not sign up for a particular job but be a striker so that after he had been in the Navy for a while to show them, he was a good worker he could strike for what was called the "Religious Programmer" title short for what was a Navy Chaplain Assistant. However, after boot camp at Great Lakes he was mis-transferred to an Air Squadron stationed in Jacksonville, Florida.

6) The Plaintiff believes that he was purposely mis-transferred by his last Company Commander who took offense in not liking me at all. The Plaintiff believes that his last Company Commander was at one time attached to his first command being VA-72 Blue Hawks in Jacksonville, Florida. His last Company Commander invaded the Plaintiff's privacy by obtaining his Medical Records noticing that it states right from the beginning the Service Member was fit for General Duty only not fit for Flying or Submarine duty at all.

7) This was only the beginning of the Plaintiff's downfall with the Navy in that he was mis-transferred to an Air Squadron and not with a command engaging with regular Seamen on a ship. The Plaintiff really enjoyed being in the Navy he had experienced problems with his right ear in not being able to pop his ear drums by holding his nose or chewing gum to help release the pressure from the ear.

8) After returning back to the Naval Base on his first tour he immediately went to sick bay to report the problem which eventually in which case his ear problems only got worse while being in the care of the Navy. The second time he was processed to fly on C -9 plane his ear problem was not resolved and was encouraged by his lawyer not to get on that plane. The Plaintiff asserted his concern to the Mater Chief who ordered me to get on the plane. I was informed by someone earlier that the pilots were having problems with getting the pane fully pressurized before flying thereby creating anxiety with the Plaintiff by not getting on the plane at all. The Plaintiff stayed back at

3

the barracks as the rest of the command took off for their two-week cruise in the Atlantic Ocean.

9) Upon return from their two-week cruise in the Atlantic Ocean the Master Chief filed NJP charges against me. There were three charges made against me. One was for being Unauthorized Absence but eventually they had to drop this charge because Navy regulations state that one must be gone for more than 72 hours to be charged with UA. Therefor, since this charge was dropped the rest should have followed suit as well.

10)     However, this did not happen. His first command continued to per sue the other two charges with disregard from what the original orders stated. Once he was deployed on the ship for the Mediterranean Cruise the Plaintiff was given a bus ticket to make it to the ship which he did. This is what should have happened the first time being issued an bus ticket or a train ticket to get to the ship the Plaintiff would have gladly reported to the ship this way. However, this was never offered to him.

11)     The Plaintiff made many friends despite the fact that he was having problems with the officers in the command. He was informed about two things that particularly stuck with him. I was told that I was misreferred to an Air Command and should have be sent to a fast frigate ship instead where there were actual Seamen aboard the ship whereby he would have felt more at home with them than on a Air Craft Carrier full of Airmen. I found out that the fast frigate was a decommissioned frigate from World War Two and how convenient this assignment would have been to be assigned to a decommissioned ship where nobody would notice the Plaintiff did not make it there. Only my last Company commander could have thought about this since the plaintiff was eventually mis transferred to an Air Command instead. The second reason what the Plaintiff was tld by a fellow ship mate was that the retiring Master Chief was forced to retired because they over heard him telling the commanding Officer that quite: "He wanted to kill someone before he retired from

4

the Navy>" This statement was unacceptable by the Commander and thus the Master Chief was forced to retire! So, when the Master Chief saw his opportunity to make me his Guinea pig, he pursued forcing me on a plane that was already having issues with being fully pressurized for take-off that day!

12. When the Plaintiff was at last transferred over to NAS Jacksonville, he waited for months to be discharged from the Navy. The Plaintiff was promoted once again in December 1986 to Seaman and then in February 1987 he was once again being accused of being UA from his duty. This Command needed to find something on the Plaintiff so that they could keep him down to Seaman Recruit level. Again, they kept him beyond the time he should have stayed in while being medically discharged from the Navy.

13. The Plaintiff finally went to sick bay to be given his final medical exam and eventually be discharged. The Plaintiff finally was medically discharged on March 10, 1987 and was kept it again for another 20 days for some strange reason before he was assaulted by a first-class Petty Officer who came back to the barracks drunk and assaulted the Plaintiff while he was trying to sleep. To the Plaintiff's surprise the Plaintiff was discharged.

13. While returning to Civilian life he immediately went for help to get his proper discharge which was Medical Discharge Under Honorable Conditions. He applied to the Navy Discharge Review Board that denied it to him the he applied to the Navy Discharge Review board as well. According to the policies of both boards the NDRB would only hear cases under 15 years and the NBCR could hear the case for those who had been discharged for 15 plus years. The last correspondence the Plaintiff received he was told that the quote: "The Statues of Limitations has expired and the Navy Board for Corrections of Naval Records could no longer hear any more appeals." However, when one looks at the BCNR web page it tells you a different set of policies. It states that the BCNR has the authority to hear a case as far out as 60 years after being discharged.

14. Once again the BCNR violates its own policies by telling the Plaintiff they would o longer listen to his appeals. The BCNR also failed to let the Plaintiff know who were on the boards who said they could no longer hear

his case because the Statue of Limitations had run out. Furthermore, the BCNR does not give

me the names of the people who were on the Board making this determination

15. Based on these allegations that are true the Plaintiff seeks relief through the Court of Law since that is what the BCNR tells him.

Conclusion

Hereby the Plaintiff files his case in this Court seeking relief to have the Defendants release his Medical Discharge Under Honorable Conditions since the Service Member was medically discharged on March 10, 1987 the Other Than Honorable Discharge is null and void. The Plaintiff really did enjoy his time in the Navy being able to see things and places he otherwise would never had the chance to experience. It truly was "more than just a job, it was an adventure," just like one of their television commercials once stated.  Had the plaintiff not been assaulted while in uniform and obtained the kind of job he was qualified for he would have most likely stayed in the Navy and retired.

Since this was not the case the Plaintiff is not only requesting his proper discharge that happened before the OTH he is also demanding a monetary judgment against the Defendants for the amount of $10,000,000 U.S. Dollars for the hardships and emotional pain he had suffered over the past years being out of the Navy.

A Jury Trial is Demanded

Allen Wegener (Plaintiff- Pro Se)

Name

April 1, 2025

Date